## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| HUE-MAR, L.L.C. | CIVIL ACTION NO. 07-0635 |
|   d/b/a Campers Unlimited | |
| | JUDGE MELANÇON |
| VERSUS | |
| | MAGISTRATE JUDGE METHVIN |
| FREEDOMROADS OPERATIONS CO., L.L.C. | |
| MEYERS RV CENTERS, L.L.C. | |
| BANK OF AMERICA, N.A. | |

### REPORT AND RECOMMENDATION
*(Rec. Doc. 13)*

Before the court is a motion to dismiss filed by defendant Bank of America, N.A. on May 7, 2007.[1]   The motion seeks dismissal pursuant to Fed.R.Civ.P. 12(b)(6) for plaintiff's failure to state a claim.  Plaintiff filed and opposition[2] and Bank of America has filed a reply brief.[3]  For the following reasons, **IT IS RECOMMENDED** that the motion be **DENIED.**

### *Factual Background and Procedural History*

Plaintiff, Hue-Mar, LLC d/b/a Campers Unlimited of Breaux Bridge, filed its original petition in the 16th Judicial District Court, St. Martin Parish, Louisiana, on March 7, 2007.  Hue-Mar alleges that on September 27, 2005, less than one month after Hurricane Katrina and just a few days after Hurricane Rita, it agreed to sell all of its assets to FreedomRoads Operations Company, LLC, a Minnesota company with its principal place of business in Illinois.  The agreed-upon price was $315,000, with appropriate adjustments for inventory.

---

[1] Rec. Doc. 13.

[2] Rec. Doc. 18.

[3] Rec. Doc. 28.

2

According to Hue-Mar, FreedomRoads directed Hue-Mar to deal with its wholly-owned New Jersey-based subsidiary, Meyer's RV Centers, LLC.  The actual sale of assets was deferred; instead, the immediate effect of the agreement was to give FreedomRoads access to the high Louisiana market demand for campers, trailers, and RV's.  Hue-Mar had a Louisiana RV Dealers license issued by the Louisiana Recreational and Used Motor Vehicle Commission, and it also had facilities, staff, and inventory based in Louisiana.

Subsequent to the execution of the Letter of Intent ("LOI")signed between Hue-Mar and FreedomRoads, Hue-Mar allegedly made sales in excess of $9 million to the United States Federal Emergency Management Agency ("FEMA"), the proceeds of which went directly into Bank of America accounts set up by FreedomRoads.[4]

By letter dated March 30, 2006, FreedomRoads informed Hue-Mar that it was no longer interested in pursuing the transaction as contemplated in the signed letter of intent and thereby terminated the agreement.

With respect to Hue-Mar's allegations against mover, Bank of America, Hue-Mar contends as follows: in order to facilitate its agreement with FreedomRoads, Hue-Mar executed an "Instrument of Assignment of Proceeds," which assigned any and all rights to any proceeds obtained from the sale of inventory to FEMA to defendant Bank of America, which Hue-Mar believed held a security interest in said inventory pursuant to an agreement between Bank of

---

[4] According to Hue-Mar, it made three sales of trailers and/or campers to FEMA following Hurricanes Katrina and Rita and after the letter of intent was executed, as follows: (1) Sale No. 1 of 62 recreational campers (identified in FEMA Purchase Order HSFEHQ-06-P-4354), which generated $1,224,947.00 in gross sales (occurred in October 2005); (2) Sale No. 2 of 300 recreational campers (identified in FEMA Purchase Order HSFEHQ-06-P-4398), which generated $5,999,400.00 in gross sales (date not specified); and (3) Sale No. 3 of 100 recreational campers (identified in FEMA Purchase Order HSFEHQ-06-P-4430), which generated $2,052,290.00 in gross sales (date not specified).

3

America and FreedomRoads and/or Meyers RV.  Hue-Mar alleges that its belief in this regard was based on the representations of Bank of America and FreedomRoads and/or Meyers RV.

Hue-Mar contends that, pursuant to the Instrument of Assignment, once the sales to FEMA were completed, Bank of America provided an account number to FEMA, into which FEMA wired its funds for the campers it purchased from Hue-Mar.  Hue-Mar contends that these deposits were for the purpose of protecting Bank of America's security interest in the inventory sold.  Hue-Mar contends that nothing in the Instrument of Assignment gave Bank of America authority to transfer funds paid by FEMA for the Hue-Mar sales into any other entity's account, and that the Instrument is silent as to the handling of the FEMA funds in excess of the security interest held by Bank of America.

In its lawsuit, Hue-Mar contends that it has been damaged as a result of the actions of FreedomRoads and Meyers RV.  Hue-Mar contends that, in reliance on the agreement it had with FreedomRoads, it generated profits of more than two million dollars by selling trailers and campers, profits that have been retained exclusively by FreedomRoads and Meyers RV.  Hue-Mar contends that FreedomRoads and Meyers RV acted in concert to deprive it of the profits on the sales of trailers to FEMA and Louisiana residents and customers.

Hue-Mar also contends that Bank of America's actions – particularly in withholding the profits from the sales to FEMA that were deposited in an account at the bank and in refusing to account for those funds – have damaged it, as more specifically set forth in the petition:

> Bank of America acted in complicity with FreedomRoads and/or Meyers RV to have the funds representing the gross profits rightfully earned by Hue-Mar on the aforementioned sales transferred to accounts for the benefit of FreedomRoads and/or Meyers RV.  Bank of America failed to disclose to Hue-Mar the nature of its relationship with FreedomRoads and/or Meyers RV and all other relevant

4

information relating to any monies owed by FreedomRoads and/or Meyers RV, or take steps to secure and segregate the profits earned on the sales of the trailers. Bank of America failed to make provisions in its dealings with Hue-Mar to segregate the funds transferred by Hue-Mar to Bank of America on the sales, so as to return to Hue-Mar the gross profits on those sales in the event that the purchase failed or chose not to proceed with the sale.  On information and belief, Bank of America retains possession of the funds representing the gross profits earned by Hue-Mar on the aforementioned ales, and is obliged to release those funds to Hue-Mar, which were earned by and due to hue-Mar.  As of this date, Bank of America has declined to release said funds to Hue-Mar.[5]

Thus, Hue-Mar claims ownership of the funds received by Bank of America and on deposit with the bank in connection with the three FEMA sales, to the extent that those receipts exceed any security interest held by Bank of America in the inventory sold to FEMA.

Bank of America filed the instant motion to dismiss on May 7, 2007, alleging primarily that, because Hue-Mar is not its customer, it owes no duties to Hue-Mar, and Hue-Mar therefore fails to state a claim against it, all as more fully set forth below.  However, subsequent to the filing of the motion to dismiss, Hue-Mar filed a first supplemental and amending petition, wherein Hue-Mar clarifies its relationship with Bank of America, contending that it is and has been a customer of Bank of America and has had a multi-faceted business relationship with Bank of America since September 30, 2005.  Hue-Mar contends that in, in addition to being a signatory party to the Instrument of Agreement, Hue-Mar also has a broader business relationship with Bank of America.  In selling campers and/or trailers, Hue-Mar frequently arranges for financing of the customers' purchases, whereby customers pay for the purchase through an interest-bearing installment loan.  After execution of the letter of intent with FreedomRoads and Meyer's RV, Hue-Mar alleges that it executed a document entitled "Bank of America Speciality Group Retail

---

[5] See Rec. Doc. 1, Notice of Removal, Attachment #1 (state court petition), ¶XIV.

5

Plan Dealer Agreement" on September 30, 2005.  Hue-Mar alleges that, pursuant to that

agreement, Bank of America began to review Hue-Mar's financing agreements with its

customers, and became a lender to Hue-Mar's customers under many of those financing

agreements.

Thus, Hue-Mar contends that its relationship with Bank of America includes both a

customer relationship and a broader business relationship.

### *Motion to Dismiss Standard*

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."

Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000), citing Kaiser

Aluminum & Chem. Sales v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir.1982).  Such

motion "may be granted only if it appears that no relief could be granted under any set of facts

that could be proven consistent with the allegations."  Meadowbriar Home For Children, Inc. v.

G.B. Gunn, et al., 81 F.3d 521, 529 (5th Cir. 1996), citing Bulger v. United States Bureau of

Prisons, 65 F.3d 48, 49 (5th Cir. 1995).  The district court must take the factual allegations of the

complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in

favor of the plaintiff.  Jefferson v. Lead Industries Ass'n., Inc., 106 F.3d 1245, 1250 (5th Cir.

1996), citing Fernandez-Montes v. Allied Pilots Ass'n., 987 F.2d 278, 284 (5th Cir. 1993);

Meadowbriar, 81 F.3d at 529;  La Porte Constr. Co. v. Bayshore Nat'l. Bank, 805 F.2d 1254,

1255 (5th Cir. 1996).  The complaint should not be dismissed for failure to state a claim unless it

appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim that

would entitle him to relief.  Id., 106 F.3d at 1250, citing Fernandez-Montes, 987 F.2d at 284,

285; Leffall v. Dallas Independent School District, 28 F.3d 521, 524 (5th Cir. 1994).

6

*Law and Analysis*

In its motion to dismiss, Bank of America contends that its "only connection" to this lawsuit is the fact that FreedomRoads and Meyers RV are its customers.  Bank of America contends that its duties run only in favor of its customers, that Hue-Mar has never alleged that it is a customer or had any deposit relationship with Bank of America, and that, consequently, Bank of America has no duty to Hue-Mar to segregate the funds that were deposited there, disclose any information to plaintiff about FreedomRoads and Meyers RV, or turn over any funds to Hue-Mar that are maintained in the deposit account of either FreedomRoads or Meyers RV, all pursuant to La. Rev. Stat. §6:317.[6]

However, subsequent to the filing of the motion to dismiss, Hue-Mar filed an amended complaint wherein it alleges that it is and has been a customer of Bank of America and has had a multi-faceted business relationship with Bank of America since September 30, 2005.  The letter of intent signed by Hue-Mar and FreedomRoads was allegedly signed on September 27, 2005, and the first FEMA sale did not occur until October 2005.  Thus, at the time that FEMA wire-transferred funds in payment for the campers it bought from Hue-Mar into a depository account at Bank of America, Hue-Mar was, in fact, a customer of Bank of America.

Furthermore, as the executors of the Instrument of Assignment, signed on October 20, 2005, Hue-Mar and Bank of America are parties to a contractual relationship.  Whether the

---

[6] La. Rev. Stat. §6:317 states:

> A bank may conclusively rely on any application, agreement, or signature card used to establish a deposit account as establishing ownership of any and all funds and other credits deposited therein, and may consider and treat any and all funds on deposit in such an account as belonging to and the sole and exclusive property of the depositor or depositors named on the account application, agreement or signature card, unless otherwise notified or directed by such depositor or depositors.

7

Instrument creates a fiduciary relationship between Hue-Mar and Bank of America has not been extensively briefed by the parties and is not an issue for the undersigned to decide at this juncture of the litigation. Nevertheless, the existence of the Instrument of Assignment, which creates a contractual relationship between Hue-Mar and Bank of America, as well as the fact that Hue-Mar is a customer of Bank of America, belies Bank of America's contention that its "only connection" to this lawsuit is its relationship with FreedomRoads and Meyers RV.

Also without merit is Bank of America's contention that Hue-Mar has failed to properly put the bank on notice that it contends that a portion of the funds deposited in the bank by FEMA belong to it. La. Rev. Stat. §6:315 sets forth the requirements to be satisfied by an entity making an adverse claim of ownership of funds on deposit in a bank:

> **§ 315. Adverse claims to deposit; procedure, indemnifying bond**
> A. Notice to any bank of an adverse claim, including an adverse claim of ownership of, right to control, or access to funds, to a deposit standing on the books of the bank to the credit of any person does not require the bank to recognize the adverse claimant unless the notice is given pursuant to either a restraining order, injunction, or other appropriate process against the bank in an action instituted by the adverse claimant wherein the person to whose credit the deposit stands is made a party and served with summons, or the adverse claimant has executed to the bank, in form and with sureties acceptable to it, a bond indemnifying the bank against any liability, loss, damage, costs, and expenses on account of payment or of dishonor of the check or other order of the person to whose credit the deposit stands. However, this Section does not apply where the person to whose credit the deposit stands is a fiduciary for the adverse claimant, and the facts constituting this relationship, as well as the facts showing reasonable cause of belief on the part of the claimant that his fiduciary is about to misappropriate the deposit, are made to appear by the affidavit of the claimant.

While it is true that, at the time the motion to dismiss was filed, Hue-Mar had not yet pled sufficient facts under §315 to put Bank of America on notice that it is making a claim to a portion of the funds, in the supplemental and amending complained, filed on June 1, 2007, Hue-

8

Mar specifically "claims ownership of the funds received by and on deposit with Bank of America in connection with the . . . three FEMA sales, to the extent those receipts exceed any security interest held by bank of America in the inventory sold to FEMA."[7]  Although Hue-Mar alleges that it does not yet know the location of the funds, that is, it is not certain that Bank of America has transferred the remaining funds into accounts held by FreedomRoads and/or Meyers RV, it believes that such is the case.  Until such time as Bank of America answers discovery directed to this issue, Hue-Mar cannot be certain of this fact.  However, in compliance with §315, Hue-Mar has named FreedomRoads and Meyers RV – the suspected "person[s] to whose credit the deposit stands" – as defendants in this lawsuit.

Considering the foregoing, it appears that Hue-Mar has complied with the requirements of §315 by putting Bank of America, FreedomRoads, and Meyers RV on notice of its adverse claim.

Considering the foregoing, and accepting all factual allegations of the complaint as true, it does not appear beyond doubt that the plaintiff cannot prove any set of facts in support of its claim.  Specifically, it does not appear that, given their contractual and business relationship, Bank of America owes no duties to Hue-mar as it alleges in its motion to dismiss.  Therefore, the undersigned concludes that Hue-Mar has adequately set forth its claims against Bank of America, and the motion to dismiss should be denied.

### Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that defendants' motion to dismiss be **DENIED.**

---

[7] See Rec. Doc. 20, Hue-Mar's First Supplemental and Amending Complaint, ¶XIV(J).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana, on June 18, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)