RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 06-24-08

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| Hue-Mar, LLC, et al | Civil Action No. 6:07-0635 |
| versus | Judge Tucker L. Melançon |
| FreedomRoads   Operations   Company, LLC, et al | Magistrate Judge Methvin |

## MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment, filed by Freedomroads Operations Company, LLC and Meyer's RV Centers, LLC[1] ("FreedomRoads")  [Rec. Doc. 72], Hue-Mar, LLC's ("Hue-Mar") opposition thereto [Rec. Doc. 99] and FreedomRoads reply memorandum [Rec. Doc. 105].  For the reasons that follow, FreedomRoads' motion will be granted in part and denied in part.

### I. Background

Plaintiff, Hue-Mar, operates a travel trailer dealership known as Campers Unlimited in Breaux Bridge, Louisiana.  Hue-Mar is owned by Huey Segura, Jr., the 70% owner and "Managing Member," and Mark Naquin, the 30% owner and CEO. *R. 72, Exh. 1, p. 4.*    Defendant, FreedomRoads, is a purchaser of recreational vehicle dealerships.  On September 27, 2005, FreedomRoads and Hue-Mar entered into a contract captioned "Letter of Intent" ("LOI") which "confirms the principal terms and conditions under which Hue-Mar ('Seller') has agreed to sell to FreedomRoads (or its assignee) ('Purchaser') certain of the assets of Seller's

---

[1]  It is undisputed that FreedomRoads Operations Company, LLC owns Meyer's RV Centers, LLC. *R. 72, 99.*

recreational vehicle sales and service business ('the Business')." *R. 72 , Exh.1, ¶ 1.*

The LOI defined the "Purchased Assets" sold to FreedomRoads by Hue-Mar as: "new and used recreational vehicle inventory; all parts and accessories ('Parts'); supplies, furniture, fixtures and equipment ('FF&E'); works in process; intangible assets; Seller's records; contract rights, orders; and customer advances (collectively, the 'Purchased Assets')." *Id. at ¶ 2.* The LOI further provided that the "Purchase Consideration" for the assets sold was: "(a) For recreational vehicle inventory, and amount equal to the sum of: (I) the invoice amount for all new vehicle inventory less any rebates relating thereto; and (ii) the fair market value for all used vehicle inventory; (b)For Parts, an amount equal to the fair market value thereof; (c) For FF&E, an amount equal to the fair market value thereof; plus (d) $315,000; (e) ... paid in cash at Closing." *Id. at ¶ 3.* The LOI also included numerous "Closing Conditions," which conditioned FreedomRoads' agreement to close on the sale. *Id. at ¶ 5.*

Under the LOI clause titled "Operation of the business Prior to Closing," FreedomRoads was authorized to consign inventory to Hue-Mar:

> (b) ·Purchaser shall, at its discretion, consign certain recreational vehicles ("Consigned Units") to Seller. During the term of this Agreement, Purchaser will provide administrative, sales and management support services to Seller in connection with its sales of the Consigned Units. Upon the sale of any Consigned Unit, Seller shall immediately forward to Purchaser 100% of all proceeds resulting from such sale (less any applicable taxes due) and hereby authorizes and approves Purchaser to effectuate the same. In connection with such consignment, Purchaser and Seller shall execute those documents required to be executed by Purchaser's floor plan lenders....
> *Id. at  ¶ 6(b).*

2

In addition to the above terms, Huey Segura handwrote the following additional term, "* Correspondingly, proportionate expenses of operating the business shall be paid by the purchaser." *Id; R. 72, Statement of Material Facts, No. 10; R. 99, Hue-Mar's Response to Statement of Uncontested Facts, No. 10.* Hue-Mar consulted legal counsel when the LOI was submitted by FreedomRoads. *Id. at No. 8.*

In connection with the terms of the LOI, on August 28, 2005, Segura signed a "Consignment Agreement" on a Bank of America form memorializing FreedomRoads' right as consignor to consign inventory to Hue-Mar as consignee at Hue-Mar's location. *R. 72, Exh. 2.* Segura also signed a "Consignee Estoppel Agreement" which was addressed to "Bank of America, N.A. as Agent, 1355 Windward Concourse, Alpharetta, GA 30005" and which referenced the "Consignment Agreement." *Id., Exh. 3.*

FreedomRoads sent several hundred items of inventory from various FreedomRoads affiliates which were sold to FEMA under Hue-Mar's license pursuant to the Consignment Agreement. FreedomRoads also sent a number of its employees to work at Hue-Mar's offices to effectuate sales of inventory. *R. 72; R. 99, Hue-Mar's Response to Statement os Uncontested Facts, No. 12 & 13.* By letter dated March 31, 2006, FreedomRoads informed Hue-Mar that it did not intend to proceed with the purchase of Hue-Mar's assets. *R. 72, Exh. 4.*

On March 2, 2007, Hue-Mar filed suit in St. Martin Parish against FreedomRoads and Bank of America. The matter was removed to this Court on April 9, 2007. *R. 1.* In its Complaint, Hue-Mar alleges that: (1) FreedomRoads

3

was unjustly enriched from the course of dealings between the parties, and it would be inequitable under the circumstances to permit FreedomRoads to retain those profits without payment of value to Hue-Mar, *R. 1, ¶ VIII*; (2) FreedomRoads "acted in a civil conspiracy to wrongfully deprive Hue-Mar of the profits it earned through its sales" and is jointly liable under La. C.C. art. 2324; *Id.* (3) FreedomRoads "breached their duty of good faith and fair dealing in structuring the receipt and transfer of monies from the sales described hereinabove and retained all profits for their own benefit and have failed to equitably distribute those profits, and in so doing, FreedomRoads and Meyer's RV acted for their own benefit rather than the benefit of the joint venture they entered with Hue-Mar to transact the sale of trailers in Louisiana using Hue-Mar's license," *Id. at ¶ X*; and (4) that FreedomRoads damaged Hue-Mar's business reputation by not purchasing its asserts per the LOI, *Id. at XIII*. Hue-Mar further alleges, in the alternative, that: (1) Hue-Mar prays for the "monies to be paid to Hue-Mar as set forth in the Letter of Intent [], plus and [sic] general and equitable damages suffered by Hue-Mar . . . .", *Id. at ¶ XI*; and, (2) FreedomRoads is liable for "breach of contract and/or quasi-contract, for all damages as may be determined to be due to Hue-Mar as a result of the dealings between the parties." *Id. at ¶ XII*.

FreedomRoads filed the motion at bar, asserting that the Court should dismiss the majority of claims asserted by Hue-Mar, and this matter should proceed to trial only on the issue of breach of the Letter of Intent. *R. 72*

## II. Summary Judgment Standard

4

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[2] *Id.* at 322-23. Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the

---

[2] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.*

adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little,* 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Analysis

In its motion for partial summary judgment, FreedomRoads moves the Court to dismiss all of plaintiff's claims with the exception of its claim for breach of the Letter of Intent and the appropriate damages in the event a breach is found. FreedomRoads contends that Hue-Mar cannot meet its burden to establish the other claims under existing Louisiana state and Fifth Circuit law.

In its response to FreedomRoads motion, Hue-Mar concedes that it has not established a "conspiracy claim" as it makes no claim for damages or other relief due to any conspiracy by FreedomRoads. Hue-Mar further concedes that it does not allege that the parties formed a joint venture under Louisiana law, and therefore it

asserts no such cause of action.  Nor does Hue-Mar dispute that it has no cause of action for damage to business reputation in this proceeding.[3]

Rather, Hue-Mar maintains that, contrary to FreedomRoads suggestion, it makes no claim for breach of contact related to the sale described in the LOI.  Hue-Mar asserts that the absence of a provision in the LOI taking into account that the transaction did not close, gives rise to its allegation that "FreedomRoads was unjustly enriched to Hue-Mar's detriment when FreedomRoads exited the relationship with the entirety of the profits generated while the parties worked on another until March 31, 2006."  *R. 99, p. 7-8.*  As such, Hue-Mar asserts, it is entitled to assert its claim under Louisiana law for unjust enrichment.

Based on FreedomRoads' motion and exhibits before the Court, Hue-Mar's Complaint and its response to the motion, the motion will be granted in that Hue-Mar's Complaint does not allege a cause of action for conspiracy, joint venture or damage to business reputation and denied as to plaintiffs' claims for unjust enrichment.

---

[3] In seeking damages for loss of business reputation, a business must prove that it had a good reputation.  Next, the plaintiff must show how the business reputation was affected to his detriment.  Further, outside testimony is needed to prove that a business reputation was damaged. *Boyte v. Wooten,* 2007 WL 3023935,11 (W.D.La.,2007) (James, J.).